UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREYWOLF HOLDINGS LP, ACM ATM, LLC,
and CASPIAN OPPORTUNITIES, INC.,

|                          | Plaintiffs, | **Case No. 08 Civ. 5971 (SCR)** |

-against-

ROBERT ONG,

|                          | Defendant. |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

---

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
1 North Lexington Avenue
White Plains, New York 10601
(914) 681-0200

Attorneys for Defendant Robert Ong

## **Table of Contents**

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| A. | Background Facts | 2 |
| B. | The Management Agreements | 3 |
| C. | Plaintiffs' Agreements With 36 Main and AFS | 3 |
| D. | AFS's Failure to Perform Under the Agreements | 4 |
| E. | The Bankruptcy Filing | 4 |
| F. | The ATMA Lawsuit | 5 |
| G. | This Lawsuit | 5 |
| LEGAL ARGUMENT | | 6 |
| I. | The Complaint Should be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted | 6 |
| | A. Plaintiffs' Fraud Claim Should be Dismissed | 7 |
| | 1. Plaintiffs' Fraud Claim Should be Dismissed as Duplicative | 7 |
| | 2. Plaintiffs' Fraud Claim Should be Dismissed Under Rule 12(b)(6) | 8 |
| | 3. Plaintiffs' Fraud Claim Should be Dismissed Under Rule 9(b) | 9 |
| | B. Plaintiffs' Negligence Claim Should be Dismissed | 10 |
| | C. Plaintiffs' Unjust Enrichment Claim Should be Dismissed | 11 |
| | D. Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing Should be Dismissed | 12 |

**Page**

E.    Plaintiffs' Breach of Fiduciary Duty Claim
Should be Dismissed...................................................... 13

1.    Plaintiffs' Breach of Fiduciary Duty Claim Should
be Dismissed as Duplicative.................................... 13

2.    Plaintiffs' Breach of Fiduciary Duty Claim Should
be Dismissed Under Rule 12(b)(6)........................... 14

3.    Plaintiffs' Breach of Fiduciary Duty Claim Should
be Dismissed Under Rule 9(b)................................. 15

F.    Plaintiffs' Claim for Punitive Damages Should be Dismissed....... 16

II.    The Complaint Should be Dismissed for Failure to Join
Necessary and Indispensible Parties................................................16

A.    Netschi, Moore and 36 Main are
Necessary Parties Under Rule 19(a)..................................... 17

1.    Netschi, Moore and 36 Main are Necessary Parties
Under Rule 19(a)(1)................................................ 17

2.    Netschi, Moore and 36 Main are Necessary Parties
Under Rule 19(a)(2)(ii)........................................... 18

B.    Joinder of Netschi, Moore and 36 Main is Feasible.................. 18

C.    Nietsche, Moore and 36 Main are
Indispensible Parties Under Rule 19(b)................................ 19

CONCLUSION............................................................................... 20

## Table of Authorities

**Case**                                                                                                     **Page**

*Abatiello v. Monsanto Co.,*
    522 F. Supp. 2d 524 (S.D.N.Y. 2007)................................................... 16

*Abercrombie v. Andrew Coll.,*
    438 F. Supp. 2d 243 (S.D.N.Y. 2006)................................................... 15

*Alredi Productions, Inc. v. Sandra Carter Productions, Inc.,*
    No. 03 CV 0790 (CSH), 2006 WL 453248 (S.D.N.Y. Feb. 22, 2006)............... 7, 8

*Apace Communications, Ltd. v. Burke,*
    522 F. Supp. 2d 509 (W.D.N.Y. 2007).................................................. 15

*Associated Dry Goods Corp. v. Towers Fin. Corp.,*
    920 F.2d 1121 (2d Cir. 1990)...........................................................16, 17, 19

*Banco Espirito de Investimento, S.A. v. Citibank, N.A.,*
    No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003).......... 13

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,*
    57 F.3d 146 (2d Cir. 1995)................................................................ 8

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007)....................................................................6, 7

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
    98 F.3d 13 (2d Cir. 1996)................................................................. 7

*Brinsights, LLC v. Charming Shoppes of Delaware, Inc.,*
    No. 06 Civ. 1745 (CM), 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008).............. 12

*Bullmore v. Banc of America Sec. LLC,*
    485 F. Supp. 2d 464 (S.D.N.Y. 2007).................................................. 15

*Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc.,*
    No. 06 Civ. 0496 (RMB), 2007 WL 54534 (S.D.N.Y. Jan. 5, 2007)................. 14-15

*Calvin Klein Trademark Trust v. Wachner,*
    123 F. Supp. 2d 731 (S.D.N.Y. 2000)................................................. 13

*Cedar Swamp Holdings, Inc. v. Zaman,*
    487 F. Supp. 2d 444 (S.D.N.Y. 2007)................................................. 15

**Case**                                                                     **Page**

*Chanayil v. Gulati,*
      169 F.3d 168 (2d Cir. 1999)................................................................... 8

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
      70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987)............................ 10-12

*Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Communications Corp.,*
      No. 06 Civ. 3157 (NRB), 2007 WL 2244062 (S.D.N.Y. Jul. 31, 2007)............. 12

*Concorde Fin. Corp. v. Value Line, Inc.,*
      No. 03 Civ. 8020 (NRB), 2004 WL 1687205 (S.D.N.Y. Jul. 28, 2004)............. 7

*ConnTech Dev. Co. v. University of Conn. Educ. Properties, Inc.,*
      102 F.3d 677 (2d Cir.1996)................................................................... 17, 19

*Cramer v. Devon Group, Inc.,*
      774 F. Supp. 176 (S.D.N.Y. 1991).......................................................... 14

*Delcon Constr. Corp. v. U.S. Dept. of Housing & Urban Dev.,*
      205 F.R.D. 145 (S.D.N.Y. 2002)........................................................... 17, 18

*Edison Fund v. Cogent Investment Strategies Fund,*
      551 F. Supp. 2d 210 (S.D.N.Y. 2008).................................................... 2

*Facella v. Federation of Jewish Philanthropies of N.Y., Inc.,*
      No. 98 Civ. 3146 (DAB), 2004 WL 1700616 (S.D.N.Y. Jul. 30, 2004)............. 14

*FSG PrivatAir Inc.,*
      No. 03 Civ. 7292 (NRB), 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004)............ 15

*Gianascio v. Giordano,*
      No. 99 CV 1796 (GBD), 2003 WL 22999454 (S.D.N.Y. Dec. 19, 2003)............ 7

*Global Discount Travel Servs., LLC v. Trans World Airlines,*
      996 F. Supp. 701 (S.D.N.Y. 1997).......................................................... 17

*Greater Miami Baseball Club Ltd. P'ship v. Selig,*
      171 F.R.D. 73 (S.D.N.Y. 1997)............................................................. 18

*Harris v. Provident Life & Accidental Ins. Co.,*
      310 F.3d 73 (2d Cir. 2002).................................................................. 12

*Harrison v. Rubinstein,*
      No. 02 Civ. 9356 (DAB), 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)............... 16

| Case | Page |
|------|------|

*Henneberry v. Sumitomo Corp. of America,*
    532 F. Supp. 2d 523 (S.D.N.Y. 2007)................................................... 14, 15

*Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.,*
    520 F. Supp. 204 (S.D.N.Y. 1981)...................................................... 18

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)................................................................ 6

*Ixe Banco, S.A. v. MBNA America Bank,*
    No. 07 Civ. 0432 (LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008)................. 13

*Johnson & Johnson v. Guidant Corp.,*
    525 F. Supp. 2d 336 (S.D.N.Y. 2007)................................................... 6

*Kawahara Enterprises, Inc. v. Mitsubishi Electric Corp.,*
    No. 96 Civ. 9631 (MBM), 1997 WL 589011 (S.D.N.Y. Sep. 22, 1997)............ 18

*Lovebright Diamond Co., Inc. v. Spragins,*
    574 F. Supp. 76 (S.D.N.Y. 1983)........................................................ 16

*Mattera v. Clear Channel Communications, Inc.,*
    No. 06 Civ. 01878 (DC), 2006 WL 3316967 (S.D.N.Y. Nov. 14, 2006)............ 2, 17

*Mazzaro de Abreu v. Bank of America Corp.,*
    525 F. Supp. 2d 381 (S.D.N.Y. 2007)................................................... 6

*Metropolitan West Asset Mgmt., LLC v. Magnus Funding, Ltd.,*
    No. 03 Civ. 5539 (NRB), 2004 WL 1444868 (S.D.N.Y. Jun. 25, 2004)............ 10

*Morse/Diesel, Inc. v. Trinity Indus., Inc.,*
    859 F.2d 242 (2d Cir. 1988)............................................................. 10

*Nay v. Merrill Lynch, Pierce, Fenner & Smith,*
    No. 05 Civ. 10264 (RMB), 2006 WL 2109467 (S.D.N.Y. Jul. 25, 2006)............ 16

*OSRecovery, Inc. v. One Group Int'l, Inc.,*
    354 F. Supp. 2d 357 (S.D.N.Y. 2005)................................................... 8

*Pan Am Corp. v. Delta Air Lines, Inc.,*
    175 B.R. 438 (S.D.N.Y. 1994)........................................................... 15

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,*
    No. 99 Civ. 3794 (BSJ), 2003 WL 22118977 (S.D.N.Y. Sep. 11, 2003)............ 10

**Case**                                                                                                      **Page**

*Provident Tradesmens Bank & Trust Co. v. Paterson,*
    390 U.S. 102, 88 S.Ct. 733 (1960)......................................................  17

*Richards v. AXA Equitable Life Ins. Co.,*
    No. 06 Civ. 3744 (PAC), 2007 WL 3084968 (S.D.N.Y. Oct. 12, 2007)............  11

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.,*
    No. 07 Civ. 376 (JMB), 2008 WL 2275902 (S.D.N.Y. Jun. 3, 2008).................  13

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.,*
    83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994)..........................  16

*Sathianathan v. Smith Barney, Inc.,*
    No. 04 Civ. 7122 (DAB), 2006 WL 538152 (S.D.N.Y. Feb. 24, 2006)...............1, 16

*Segatt v. GSI Holding Corp.,*
    No. 07 Civ. 11413 (WHP), 2008 WL 2971519 (Aug. 1, 2008)........................  11

*Simon v. Unum Group,*
    No. 07 Civ. 11426 (SAS), 2008 WL 2477471 (S.D.N.Y. Jun. 19, 2008)............  1, 7, 12

*Smith v. Kessner,*
    183 F.R.D. 373 (S.D.N.Y. 1998)........................................................  17

*Solutia Inc. v. FMC Corp.,*
    456 F. Supp. 2d 429 (S.D.N.Y. 2006)..................................................  9

*Spagnola v. Chubb Corp.,*
    No. 06 Civ. 9960 (HB), 2007 WL 927198 (S.D.N.Y. Mar. 27, 2007)...............  11

*Spanierman Gallery, PSP v. Love,*
    No. 03 Civ. 3188 (VM), 2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003)............9, 11, 16

*Viacom Int'l, Inc. v. Kearney,*
    212 F.3d 721 (2d Cir. 2000)............................................................  16

*Vitrano v. State Farm Ins. Co.,*
    No. 08 CV 00103 (JGK), 2008 WL 2696156 (S.D.N.Y. Jul. 8, 2008)...............  11

*William Kaufman Org., Ltd. v. Graham & James LLP,*
    269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dept. 2000)...............................  13

*World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007)................................................. 13, 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREYWOLF HOLDINGS LP, ACM ATM, LLC,
and CASPIAN OPPORTUNITIES, INC.,

                                    Plaintiffs,          **Case No. 08 Civ. 5971 (SCR)**

                  -against-

ROBERT ONG,

                                    Defendant.

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Robert Ong ("Ong"), by and through his attorneys, DelBello Donnellan
Weingarten Wise & Wiederkehr, LLP, respectfully submits this memorandum of law, together
with the accompanying Declaration of Brian T. Belowich dated September 5, 2008 ("Belowich
Dec."), in support of Ong's motion to dismiss the Complaint herein (the "Complaint") pursuant
to Rules 12(b)(6), 9(b), 12(b)(7) and 19 of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

Plaintiffs Greywolf Holdings LP ("Greywolf"), ACM ATM, LLC ("ACM") and Caspian
Opportunities, Inc. ("Caspian") (collectively, "Plaintiffs") improperly attempt to transform this
relatively simple breach of case into an action for fraud, negligence, unjust enrichment, breach of
fiduciary duty, breach of the covenant of good faith and fair dealing, and punitive damages.
These claims (to the extent they are even recognized as separate causes of action under New
York law)[1] should be dismissed on grounds that they are entirely duplicative of Plaintiffs' breach

---

[1] Plaintiffs purport to state claims against Ong for punitive damages and breach of the covenant of good faith and
fair dealing. These claims are not recognized as separate causes of action under New York law. *See Sathianathan v.
Smith Barney, Inc.*, No. 04 Civ. 7122 (DAB), 2006 WL 538152, *29 (S.D.N.Y. Feb. 24, 2006) ("The law is clear...
that a plaintiff may not assert a separate cause of action for punitive damages"); *Simon v. Unum Group*, No. 07 Civ.

of contract claim and are otherwise insufficient to satisfy the pleading requirements set forth under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

The Complaint should also be dismissed pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure for failure to join necessary and indispensable parties. The facts set forth in the Complaint establish that Plaintiffs entered into certain management agreements with Ong, pursuant to which Ong merely acted as an intermediary between Plaintiffs and the real culprits in this action -- Walter Netschi ("Netschi") and Vance Moore, II ("Moore"). Plaintiffs admit that they contracted directly with companies owned by Netchi and Moore for the purchase of more than 2,000 Automated Teller Machines ("ATMs") and allege that Netschi and Moore defrauded them out of $29 million. Nonetheless, Plaintiffs inexplicably failed to name Netschi and Moore as parties to this action. For this reason alone, the Complaint should be dismissed.

## STATEMENT OF FACTS[2]

### A.    Background Facts

Ong is the founding member of Jade Stone Capital Management, LLC, a limited liability company formed in 2004 for the purpose of structuring and managing ATM investment vehicles and various hedge fund participations. *See* Belowich Aff., Ex. A at ¶¶ 9, 10.

In or around September, 2004, Ong began investing his own funds in the ATM business through two individuals who were well known in the industry for locating and servicing ATM

---

11426 (SAS), 2008 WL 2477471, *3 (S.D.N.Y. Jun. 19, 2008) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled").

[2] The facts set forth herein are based upon allegations raised in the Complaint, documents referenced in the Complaint, documents that Plaintiffs relied upon in bringing suit and matters of which judicial notice may be taken . *See Edison Fund v. Cogent Inv. Strategies Fund*, 551 F. Supp. 2d 210, 217 (S.D.N.Y. 2008) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may  consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken"); *Mattera v. Clear Channel Communications, Inc.*, No. 06 Civ. 01878 (DC), 2006 WL 3316967, *3 (S.D.N.Y. Nov. 14, 2006) (In deciding a motion to dismiss under Rules 12(b)(7) and 19, the Court may consider any matters outside the pleadings).

Machines -- Netschi and Moore. Shortly thereafter, Ong (through his attorneys, Stursburg & Associates) performed a thorough background check and determined that Netschi and Moore were reputable businessmen with whom he would invest his funds.[3] *See* Belowich Dec., Ex. B.

## B.    The Management Agreements

In or around October 2004, Greywolf decided to join Ong in the ATM business. On January 7, 2005, Greywolf and Ong entered into a Management Agreement, pursuant to which Ong agreed to "identify, analyze, acquire, operate, maintain and manage ATMs," "conduct due diligence concerning ATMs suitable for purchase" by Greywolf and "negotiate with third parties on behalf of [Greywolf] concerning the acquisition of ATMs." *See* Belowich Dec., Ex. C at ¶ 1. Caspian and ACM subsequently entered into similar Management Agreements with Ong (dated January 1, 2006 and May 25, 2006 respectively). *See id.* at Exs. D-E.

## C.    Plaintiffs' Agreements With 36 Main and AFS

After execution of the Management Agreements (which Plaintiffs drafted and failed to attach as exhibits to the Complaint), Plaintiffs began contracting directly with Netschi and Moore, through their companies 36 Main Street, LLC ("36 Main") and ATM Financial Services, LLC ("AFS"), for the acquisition of 2,000 ATMs in locations throughout the United States for a total purchase price of approximately $29 million. *See* Belowich Dec., Ex. A at ¶¶ 1, 45, 47.

Plaintiffs executed more than thirty Asset Purchase Agreements and ATM Equipment Management Agreements directly with 36 Main and AFS in connection with acquisition of these ATMs. *See* Belowich Dec., Ex. A at ¶¶ 46, 48-50; Exs. F-K.[4] Plaintiffs also received Bills of

---

[3] Ong invested approximately $4 million of his own funds through Netschi and Moore over a period of three years. Ong lost his entire investment and intends to pursue legal action against Netschi and Moore.

[4] It is curious that Plaintiffs chose not to attach any of the Asset Purchase Agreements or ATM Equipment Management Agreements as exhibits to the Complaint.

Sale directly from 36 Main. *See id.* at Exs. F-H. Ong's role was limited to that of a consultant as per the express written terms of the Management Agreements. *See id.* at Exs. C-E.

36 Main agreed under the Asset Purchase Agreements to sell ATMs directly to Plaintiffs. *See* Belowich Dec., Ex. A at ¶ 42; Exs. F-H. AFS agreed "to be responsible for, among other things: (a) contracting with merchants for the right to place ATMs in their establishments; (b) transporting and placing the ATMs in specific locations; (c) servicing the ATMs, including replenishing the cash dispensed by the machines; and (d) coordinating and collecting the ATM fees." Belowich Dec., Ex. A at ¶¶ 48-49; Exs. I-K. AFS also agreed to provide Plaintiffs with monthly statements containing "accurate, disinterested data regarding the performance of the ATMs." *See id.* at Ex. A, ¶ 20.

**D.     AFS's Failure to Perform Under the Agreements**

"In October 2007 and thereafter, AFS stopped performing under its agreements with Plaintiffs." Belowich Dec., Ex. A at ¶ 52. Specifically, "AFS stopped producing… required monthly statements and paying [Plaintiffs] the net revenues." *Id.* "In response to Plaintiffs' demands for payment, Moore (on behalf of AFS) [allegedly] made numerous false statements, including (a) blaming AFS's failure to issue the statements and pay the revenues on the failed integration of a new software package, (b) continually promising that the money would be paid, first in mid to late December and then by January 31, 2008, (c) claiming that the Plaintiffs' net revenues were segregated and maintained at third party processors, and (d) stating that the ATMs were at the claimed locations and being maintained and earning money." *Id.* at ¶ 53.

**E.     The Bankruptcy Filing**

On or about February 12, 2008, AFS voluntarily filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Middle District of Florida, Orlando Division

(Case No. 6:08-bk-00969-KSJ).  *See* Belowich Dec., Ex. A at ¶ 70; Ex. L.  The bankruptcy case

has been converted to Chapter 7 and is currently pending.  *See id.*  Plaintiffs have filed a claim

against AFS in the bankruptcy proceeding.  *See* Belowich Dec., Ex. L.

**F.     The ATMA Lawsuit**

In or around March 2008, a company known as Automated Teller Machine Advantage,

LLC ("ATMA") commenced a lawsuit in the U.S. District Court for the Southern District of

New York against Netschi, Moore, 36 Main and others (Case No. 08 Civ. 3340) alleging that

Netschi and Moore were involved in a complex scheme to defraud ATMA and other purchasers

(including Ong) of "tens of millions of dollars."  *See* Belowich Dec., Ex. M.  Specifically,

ATMA alleges:

> Defendants induced Plaintiff to purchase non-existent phantom Placed ATMs by
> making false verbal representations and delivering fraudulent, false, fabricated,
> and fictitious information to Plaintiff...
>
> Defendants furthered their scheme by delivering fraudulent, false, fabricated and
> fictitious information to Plaintiff in connection with the ATMs purchased by
> Plaintiff including: bills of sale, due diligence reports, lease agreements,
> assignments of the lease agreements, and other fictitious documents.
>
> Following the sale of the phantom Placed ATMs to Plaintiff, the Defendants
> perpetuated their scheme by providing monthly reports to Plaintiff that purported
> to state the transactional activity of the Placed ATMs purchased by Plaintiff and
> by delivering funds purportedly based on that transactional activity.
>
> Defendants systematically sold additional phantom Placed ATMs to Plaintiff, <u>and
> other purchasers of phantom Placed ATMs,</u> to perpetuate their scheme.
>
> Defendants, through their scheme, induced Plaintiff, <u>and other purchasers,</u> to
> deliver tens of millions of dollars to Defendants for the purchased of the phantom
> Placed ATMs.

*Id.* at ¶¶ 6-10 (emphasis added).

**G.     This Lawsuit**

On or about July 1, 2008, Plaintiffs commenced this lawsuit against Ong for breach of

contract, fraud, negligence, unjust enrichment, breach of fiduciary duty, breach of the covenant

of good faith and fair dealing and punitive damages. The allegations set forth in the Complaint herein are strikingly similar to those in the ATMA case. There is, however, one major difference. Plaintiffs in this case inexplicably failed to name the real culprits -- Netschi, Moore and 36 Main -- as defendants.

## LEGAL ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The claims asserted in the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss under Rule 12(b)(6), courts must apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 345 (S.D.N.Y. 2007) (citing *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007)). "Under this standard, a complaint may be dismissed where it fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).[5]

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 127 S.Ct. at 1965). "In order to state a claim, the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Id.* "Where a plaintiff 'has not nudged its claims across the line from conceivable to plausible, its complaint

---

[5] The Supreme Court in *Twombly* overturned the pleading standard previously set forth in *Conley v. Gibson*, "which had provided that a motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 387 n. 10 (S.D.N.Y. 2007) (citing *Twombly*, 127 S.Ct. at 1968). "In *Twombley*, the Supreme Court [stated] that *Conley's* 'no set of facts language [had] been questioned, criticized, and explained away long enough,' has 'earned its retirement,' and is now 'best forgotten.'" *Id.* (citing *Twombly*, 127 S.Ct. at 1965).

must be dismissed." *Id.* at 345-46 (citing *Twombly*, 127 S.Ct. at 1974).  Plaintiffs have failed to satisfy the requisite pleading standard set forth in *Twombly* and its progeny.

### A.    Plaintiffs' Fraud Claim Should be Dismissed

#### 1.    Plaintiffs' Fraud Claim Should be Dismissed as Duplicative

Plaintiffs' second cause of action for "intentional fraud" should be dismissed on grounds that it is duplicative of the breach of contract claim.  "In New York, a plaintiff fails to state a claim for fraud when the only fraud alleged relates to a breach of contract, or when the fraud claim is duplicative of a breach of contract claim, or when the fraud claim is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement." *Alredi Productions, Inc. v. Sandra Carter Productions, Inc.*, No. 03 CV 0790 (CSH), 2006 WL 453248, *7 (S.D.N.Y. Feb. 22, 2006) (internal citations omitted). *See also Simon*, 2008 WL 2477471, at *3 (internal citations omitted).

"To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). *See also Concorde Fin. Corp. v. Value Line, Inc.*, No. 03 Civ. 8020 (NRB), 2004 WL 1687205, *4-6 (S.D.N.Y. Jul. 28, 2004); *Gianascio v. Giordano*, No. 99 CV 1796 (GBD), 2003 WL 22999454, *4 (S.D.N.Y. Dec. 19, 2003).

Plaintiffs in this case utterly fail to satisfy the requirements articulated above.  Plaintiffs merely allege that Ong conducted due diligence on Neschi and Moore and that he failed to

disclose certain information to Plaintiffs. *See* Belowich Dec., Ex. A at ¶¶ 86-91. These allegations are virtually identical to those underlying Plaintiffs' breach of contract claim (*see id.* at ¶¶ 75, 81-83) and do not give rise to a separate fraud claim. *See, e.g., Alredi Productions*, 2006 WL 453248, at *7.

### 2.    Plaintiffs' Fraud Claim Should be Dismissed Under Rule 12(b)(6)

Plaintiffs' "intentional fraud" claim should also be dismissed for failure to state a cause of action upon which relief can be granted. "The elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *OSRecovery, Inc. v. One Group Int'l, Inc.*, 354 F. Supp. 2d 357, 376 (S.D.N.Y. 2005) (citing *Chanayil v. Gulati,* 169 F.3d 168 (2d Cir. 1999)). Where, as here, an omission or failure to disclose certain information is alleged, "the plaintiff must demonstrate that the defendant had a duty to disclose." *See id.* at 376-77. *See also Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("To establish fraudulent concealment, a plaintiff must... prove that the defendant had a duty to disclose the material information").

A duty to disclose may only arise in a business transaction where: "(a) one party has 'superior knowledge' of certain information; (b) that information is not readily available to the other party; and (c) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe*, 57 F.3d at 155. Plaintiffs in this case do not (and cannot) allege that Ong had superior knowledge of information that was not readily available to Plaintiffs, nor do they allege that Ong knew that Plaintiffs were acting on the basis of mistaken knowledge. Plaintiffs simply allege without any degree of specificity that Ong made "false representations"

and that he "failed to disclose" certain information.  These allegations are insufficient to state a claim for fraud.

### 3.    Plaintiffs' Fraud Claim Should be Dismissed Under Rule 9(b)

Plaintiffs' "intentional fraud" claim should also be dismissed for failure to satisfy the particularity requirement set forth under Rule 9(b) of the Federal Rule of Civil Procedure.[6]  "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Spanierman Gallery, PSP v. Love*, No. 03 Civ. 3188 (VM), 2003 WL 22480055, *4 (S.D.N.Y. Oct. 31, 2003).

Plaintiffs in this case allege that Ong made numerous false representations, but fail to state with any degree of particularity exactly when or where those representations were purportedly made.  By way of example, Plaintiffs allege that Ong "falsely represented that Netschi and Moore were completely independent from each other and would serve as 'independent checks' on one another;" "explicitly stated… that he had conducted extensive due diligence on both Netschi and Moore;" and that he "deliberately misrepresented his due diligence." *See* Belowich Dec., Ex. A at ¶¶ 3, 18, 21, 24.  These conclusory assertions are insufficient to satisfy the heightened pleading requirements of Rule 9(b).  Accordingly, and for the reasons set forth herein, Plaintiffs' "intentional fraud" claim should be dismissed.

---

[6] Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." Fed. R. Civ. P. 9(b).  "This heightened pleading standard is designed (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her goodwill, and (3) to reduce the number of strike suits." *Solutia v. FMC Corp.*, 456 F. Supp. 2d 429, 449 (S.D.N.Y. 2006).

**B.    Plaintiffs' Negligence Claim Should be Dismissed**

Plaintiffs' third cause of action for negligence should be dismissed on grounds that it too is duplicative of the breach of contract claim. New York law does not permit a negligence claim to stand when it merely duplicates an alleged breach of contract. *See PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, *26 (S.D.N.Y. Sep. 11, 2003). "[A] tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached." *Metropolitan West Asset Mgmt., LLC v. Magnus Funding, Ltd.*, No. 03 Civ. 5539 (NRB), 2004 WL 1444868, *9 (S.D.N.Y. Jun. 25, 2004). *See also PPI*, 2003 WL 22118977, at *26 (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987)).

"[M]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 250 (2d Cir. 1988) (citing *Clark-Fitzpatrick*, 70 N.Y.2d at 390, 516 N.E.2d 190, 521 N.Y.S.2d 653). *See also Magnus Funding*, 2004 WL 1444868, at *9 (where "a tort claim does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached, the tort claim cannot be sustained"); *PPI*, 2003 WL 22118977, at *26 ("if the only interest at stake is that of holding the defendant to a promise... the plaintiff may not transmogrify the contract claim into one for tort").

Plaintiffs do not even pretend that Ong owed them a duty of care independent of his duty to perform under the Management Agreements. Plaintiffs allege that Ong failed "to comport with his duties pursuant to the Management Agreements" and that he "breached his duty to

10

plaintiffs" by, *inter alia*, "failing to manage, operate and administer the day to day operations;" "failing to conduct due diligence concerning ATMs suitable for purchase by Plaintiffs;" "failing to evaluate existing ATM investments;" "failing to promptly advise Plaintiffs of any conflicts or potential conflicts of interest;" and "failing to notify Plaintiffs of any event which affects Ong's ability to perform his Duties or obligations under' the Management Agreements." *See* Belowich Dec., Ex. A at ¶¶ 95-101, 103. These allegations are <u>identical</u> to those set forth in Plaintiffs' breach of contract claim (*see id.* at ¶¶ 77-84) and do not give rise to a separate negligence claim. Plaintiffs' negligence claim should therefore be dismissed.

### C.    Plaintiffs' Unjust Enrichment Claim Should be Dismissed

Plaintiffs' fourth cause of action for unjust enrichment should also be dismissed. "Under New York law, a plaintiff cannot bring a claim for unjust enrichment where there is a valid and enforceable contract governing the same subject." *Segatt v. GSI Holding Corp.*, No. 07 Civ. 11413 (WHP), 2008 WL 2971519, *9 (Aug. 1, 2008) (citing *Clark-Fitzpatrick,* 70 N.Y.2d at 389, 516 N.E.2d 190, 521 N.Y.S.2d 653). *See also Vitrano v. State Farm Ins. Co.*, No. 08 CV 00103 (JGK), 2008 WL 2696156, *3 (S.D.N.Y. Jul. 8, 2008) (citing *Spanierman*, 2003 WL 22480055, at *4); *Richards v. AXA Equitable Life Ins. Co.*, No. 06 Civ. 3744 (PAC), 2007 WL 3084968, *5 (S.D.N.Y. Oct. 12, 2007); *Spagnola v. Chubb Corp.*, No. 06 Civ. 9960 (HB), 2007 WL 927198, *5 (S.D.N.Y. Mar. 27, 2007).

Plaintiffs do not allege that the Management Agreements are invalid or unenforceable in any respect.  To the contrary, Plaintiffs allege that they "entered into various Management Agreements with Ong;" they "fully performed their obligations pursuant to the Management Agreements;"[7] and Ong breached the Management Agreements, thereby causing damages. *See*

---

[7] This allegation is fatal to Plaintiffs' unjust enrichment claim.  It is clear that "a plaintiff cannot seek damages for unjust enrichment 'where the suing party has fully performed on a valid written agreement, the existence of which is

11

Belowich Dec., Ex. A at ¶¶ 4, 75-85, 105.  Plaintiffs further allege (within the context of their duplicative unjust enrichment claim) that "it would be unfair for Ong to retain this amount pursuant to the Management Agreements." *See id.* at ¶ 106.  These allegations make clear that the Management Agreements govern the same subject matter as Plaintiffs' unjust enrichment claim.  Based upon the foregoing, Plaintiffs' unjust enrichment claim should be dismissed.

### D.    Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing Should be Dismissed

"New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Simon*, 2008 WL 2477471, at *4 (quoting *Harris v. Provident Life & Accidental Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)).  *See also Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Communications Corp.*, No. 06 Civ. 3157 (NRB), 2007 WL 2244062, *6 (S.D.N.Y. Jul. 31, 2007) (dismissing claim for breach of implied covenant of good faith and fair dealing where allegations underlying claim were "essentially identical to the basis for plaintiff's breach of contract claim").

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is based almost entirely upon the allegations underlying their breach of contract claim.  Plaintiffs allege (within the context of their claim for breach of the implied covenant of good faith and fair dealing) that "Ong had an obligation to fulfill his contractual commitments pursuant to the Management Agreements" and that Ong breached the Management Agreements by "failing to "disclose his prior experience with Point of Service Machines" and by "failing to disclose the close relationship between Netschi and Moore." *See* Belowich Dec., Ex. A at ¶¶ 110-112.  These

---

undisputed, and the scope of which clearly covers the dispute between the parties.'" *Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*, No. 06 Civ. 1745 (CM), 2008 WL 216969, *7 (S.D.N.Y. Jan. 16, 2008) (quoting *Clark-Fitzpatrick*, 70 N.Y.2d at 389, 516 N.E.2d 190, 521 N.Y.S.2d 653).

allegations are essentially identical to those forming the basis for Plaintiffs' breach of contract claim. *See id.* at ¶¶ 37-50, 75-85. Plaintiffs' fifth cause of action for breach of the covenant of good faith and fair dealing should therefore be dismissed.

### E.    **Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed**

#### 1.    **Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed as Duplicative**

It is well-settled that breach of fiduciary duty claim "which is merely duplicative of a breach of contract claim cannot stand." *Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376 (JMB), 2008 WL 2275902, *3 (S.D.N.Y. Jun. 3, 2008) (citing *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dept. 2000)); *Ixe Banco, S.A. v. MBNA America Bank*, No. 07 Civ. 0432 (LAP), 2008 WL 650403, *12 (S.D.N.Y. Mar. 7, 2008). "In fact, where a contract governs the relationship between two commercial parties, the assumption is that there is no fiduciary relationship unless the contract provides otherwise." *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 503-04 (S.D.N.Y. 2007) (citing *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731 (S.D.N.Y. 2000)).

In order to overcome this assumption, the plaintiff "must set forth allegations that, <u>apart from the terms of the contract</u>, demonstrate that the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties." *Robin Bay*, 2008 WL 2275902, at *3 (emphasis added) (internal quotations omitted). *See also Banco Espirito de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, *15-16 (S.D.N.Y. Dec. 22, 2003) ("A plaintiff must demonstrate a legal duty separate from the duty to perform under the contract for a fiduciary duty to exist").

13

Plaintiffs do not set forth any allegations that Ong owed them a duty independent of his duty to perform under the Management Agreements.  To the contrary, Plaintiffs allege (within the context of their claim for breach of fiduciary duty) that Ong "as Manager of the various Management Agreements, had a duty to his principals to act in good faith and in Plaintiffs' best interests." *See* Belowich Dec., Ex. A at ¶ 116.  Plaintiffs further allege that Ong "owed Plaintiffs his undivided and unqualified loyalty and was prohibited from acting in any manner contrary to Plaintiffs' interests." *See id.*  These allegations demonstrate conclusively that Ong did not owe Plaintiffs any duty independent of his duty to perform under the Management Agreements.  Accordingly, Plaintiffs' sixth cause of action for breach of fiduciary should be dismissed.

### 2.    Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed Under Rule 12(b)(6)

Plaintiffs' breach of fiduciary duty claim should also be dismissed for failure to state a cause of action upon which relief can be granted.  In order to state a claim for breach of fiduciary duty, the plaintiff has the burden to demonstrate that "'there is (1) a fiduciary relationship between the parties' and '(2) the fiduciary duty has been breached.'" *Facella v. Federation of Jewish Philanthropies of N.Y., Inc.*, No. 98 Civ. 3146 (DAB), 2004 WL 1700616, *5 (S.D.N.Y. Jul. 30, 2004) (quoting *Cramer v. Devon Group, Inc.*, 774 F. Supp. 176, 184 (S.D.N.Y. 1991)); *Henneberry v. Sumitomo Corp. of America*, 532 F. Supp. 2d 523, 550 (S.D.N.Y. 2007).

In determining whether a fiduciary relationship exists, "New York courts conduct a fact-specific inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise and knowledge." *Facella*, 2004 WL 1700616, at *6.  In a case like this, where the parties deal at arms length in a commercial transaction, "no relation of trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Cal Distributor, Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, No. 06

14

Civ. 0496 (RMB), 2007 WL 54534, *9 (S.D.N.Y. Jan. 5, 2007) (citing *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 511 (S.D.N.Y. 1994)).

There are no extraordinary circumstances present in this case sufficient to find the existence of a fiduciary relationship between Ong and Plaintiffs.   However, even if Plaintiffs could establish the existence of a fiduciary duty relationship (they cannot), they must still show that the breaches claimed involve matters within the fiduciary relationship. *See Henneberry*, 532 F. Supp.2d at 551 (citing *FSG PrivatAir Inc.*, No. 03 Civ. 7292 (NRB), 2004 WL 1837366, *7 (S.D.N.Y. Aug. 17, 2004)).   The breaches alleged in the Complaint do not involve matters within the fiduciary relationship -- they involve matters arising under the Management Agreements. *See* Belowich Dec., Ex. A at ¶¶ 75-85, 115-120.   Plaintiffs' breach of fiduciary duty claim should therefore be dismissed.

### 3.   Plaintiffs' Breach of Fiduciary Duty Claim Should be Dismissed Under Rule 9(b)

Plaintiffs' breach of fiduciary duty claim should also be dismissed under Rule 9(b). There is no doubt that "Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct, such as an attempt to induce action or inaction on the part of the investors by means of falsehoods or material omissions." *Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509 (W.D.N.Y. 2007) (citing *Henneberry*, 532 F. Supp. 2d at 555; *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007); *Bullmore v. Banc of America Sec. LLC*, 485 F. Supp. 2d 464 (S.D.N.Y. 2007)). *See also Jakks*, 530 F. Supp. 2d at 504; *Abercrombie*, 430 F. Supp. 2d at 274.

"To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements

were made, and identify those responsible for the statements." *Spanierman*, 2003 WL 22480055, at *4. Plaintiffs fail to provide any particulars as to the conduct which supposedly constitutes a breach of fiduciary duty as required under Rule 9(b). Plaintiffs' breach of fiduciary duty claim should therefore be dismissed.

### F.    Plaintiffs' Claim for Punitive Damages Should be Dismissed

"The law is clear… that a plaintiff may not assert a separate cause of action for punitive damages." *Sathianathan*, 2006 WL 538152, at *29. *See also Abatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 543 (S.D.N.Y. 2007) (citing *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994)); *Harrison v. Rubinstein*, No. 02 Civ. 9356 (DAB), 2007 WL 582955, *21 (S.D.N.Y. Feb. 26, 2007); *Nay v. Merrill Lynch, Pierce, Fenner & Smith*, No. 05 Civ. 10264 (RMB), 2006 WL 2109467, *6 (S.D.N.Y. Jul. 25, 2006); *Lovebright Diamond Co., Inc. v. Spragins*, 574 F. Supp. 76, 80 (S.D.N.Y. 1983). Plaintiffs' seventh cause of action for punitive damages should therefore be dismissed.

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN NECESSARY AND INDISPENSIBLE PARTIES

The Complaint should be dismissed in its entirety under Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. Rule 19 requires courts to conduct a two-step test for determining whether to dismiss an action for failure to join a necessary and indispensable party. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000); *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990). The Court must first determine if the party sought to be joined qualifies as a "necessary" party under Rule 19(a). *See Viacom*, 212 F.3d at 724. If the party is necessary, but joinder is not feasible for jurisdictional or other reasons, the Court must then determine whether the party is indispensable under Rule 19(b). *See id.* If the Court determines that the party is necessary and indispensable, then it <u>must dismiss</u> the

action. *See ConnTech Dev. Co. v. University of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 681-82 (2d Cir.1996); *Mattera*, 2006 WL 3316967, at *3.

### A.    Netschi, Moore and 36 Main are Necessary Parties Under Rule 19(a)

There is no question that Netschi, Moore and 36 Main are necessary parties within the meaning of Rule 19(a). "A party is a 'necessary' party pursuant to Rule 19(a) if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Smith v. Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998) (citing Fed. R. Civ. P. 19(a); *Provident Tradesmens Bank & Trust Co. v. Paterson*, 390 U.S. 102, 107-08, 88 S.Ct. 733, 736-37 (1960); and *Associated Dry Goods*, 920 F.2d at 1124). Netschi, Moore and 36 Main are necessary parties within the meaning of Rules 19(a)(1) and 19(a)(2)(ii).

### 1.    Netschi, Moore and 36 Main are Necessary Parties Under Rule 19(a)(1)

Rule 19(a)(1) "is designed to protect those who are already parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." *Delcon Constr. Corp. v. U.S. Dept. of Housing & Urban Dev.*, 205 F.R.D. 145, 147 (S.D.N.Y. 2002).[8] The joinder of Netschi, Moore and 36 Main is required in this case in order to effectively and completely adjudicate the dispute between Plaintiffs and Ong. If Netschi, Moore and 36 Main are not joined, Plaintiffs and

---

[8] The Advisory Committee's note to this provision provides that the complete relief clause of Rule 19(a) was designed to stress the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." *Global Discount Travel Servs., LLC v. Trans World Airlines*, 996 F. Supp. 701 (S.D.N.Y. 1997).

Ong will undoubtedly file separate lawsuits for damages arising out of the very same transactions that are at issue in this case.

### 2.    Netschi, Moore and 36 Main are Necessary Parties Under Rule 19(a)(2)

Netschi, Moore and 36 Main are also necessary parties within the meaning of Rule 19(a)(2)(ii), which requires joinder of a party if disposition in its absence would subject any of the persons already parties to a substantial risk of incurring inconsistent obligations by reason of the absent party's interest. *See Kawahara Enterprises, Inc. v. Mitsubishi Electric Corp.*, No. 96 Civ. 9631 (MBM), 1997 WL 589011, *3 (S.D.N.Y. Sep. 22, 1997). *See also Greater Miami Baseball Club Ltd. P'ship v. Selig*, 171 F.R.D. 73, 77 (S.D.N.Y. 1997) ("Rule 19(a)(2)(ii) is aimed at preventing multiple litigation and inconsistent relief"); *Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.*, 520 F. Supp. 204, 206 (S.D.N.Y. 1981) (Rule 19(a)(2)(ii) "must be read broadly in light of the strong public policy in favor of comprehensive disposition of litigation"). The joinder of Netschi, Moore and 36 Main is required under Rule 19(a)(2)(ii) in order to prevent multiple litigation between the parties and the possibility of inconsistent relief.

### B.    Joinder of Netschi, Moore and 36 Main is Feasible

The joinder of Netschi, Moore and 36 Main is clearly feasible. Joinder of a necessary party is "feasible" if the party is subject to service of process and his joinder does not destroy the basis for the court's jurisdiction. *See Delcon*, 205 F.R.D. at 147. Plaintiffs allege that this Court has subject matter jurisdiction based upon diversity of citizenship. *See* Belowich Dec., Ex. A at ¶ 10. Plaintiffs allege Greywolf is a Delaware limited partnership located in Purchase, New York; ACM is a Delaware limited liability company located in New York, New York; Caspian is a Delaware corporation located in Harrison New York; and Ong is a resident of Florida. *See id.* at ¶¶ 6-9. According to the Amended Complaint in the ATMA case, Netschi is a resident of

18

Arkansas and Texas; Moore is a resident of Florida and North Carolina; and 36 Main is a Nevada limited liability company located in Texas. *See* Belowich Dec. Ex. L at ¶¶ 16, 19, 20 and Exs. F-H. Thus, the joinder of Netschi, Moore and 36 Main will not destroy diversity jurisdiction.

### C.    Netschi, Moore and 36 Main are Indispensible Parties Under Rule 19(b)

If the Court finds that joinder of Netschi, Moore and 36 Main is for some reason not feasible, the Complaint should nonetheless be dismissed on grounds that Netschi, Moore and 36 Main are indispensable parties. Rule 19(b) sets forth four factors that a court shall consider when determining if a party is indispensable: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;" (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;" (3) "whether a judgment rendered in the person's absence will be adequate;" and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." *Smith*, 183 F.R.D. at 375-76 (citing Fed. R. Civ. P. 19(b) and *Associated Dry Goods*, 920 F.2d at 1124). "An inquiry pursuant to Rule 19(b) is guided by the court's discretion and the facts of the particular case." *Id.* (citing *ConnTech*, 102 F.3d at 682).

Netschi, Moore and 36 Main must be considered "indispensable" based on the factors articulated above. This entire case is based on wrongdoing by Netschi, Moore and 36 Main. A judgment rendered in their absence would not only be inadequate -- it would cause severe prejudice to the parties, which cannot be avoided by "protective provisions in the judgment, by the shaping of relief, or other measures." Moreover, Plaintiffs will have an adequate remedy if the action is dismissed for non-joinder. Plaintiffs can continue to pursue their claims against AFS in the bankruptcy proceeding. They can also commence an action directly against Neschi, Moore and 36 Main as they should have done here.

19

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court issue an Order: (i) granting Ong's motion to dismiss the Complaint herein; and (ii) granting to Ong such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
      September 5, 2008

                    DELBELLO DONNELLAN WEINGARTEN
                    WISE & WIEDERKEHR, LLP

By:          _____
                    Kevin J. Plunkett (KP 3049)
                    Brian T. Belowich (BB 6910)
                    1 North Lexington Avenue
                    White Plains, New York 10601
                    (914) 681-0200
                    Attorneys for Defendant Robert Ong